UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE – OPELOUSAS DIVISION

UNITED STATES OF AMERICA        CRIMINAL NO. 6:00-cr-60029-01

VERSUS        JUDGE MELANÇON

JOHN TIMOTHY COTTON        MAGISTRATE JUDGE HANNA

## REPORT  AND  RECOMMENDATION

(Rec. Doc. 781)

Pending before this Court is John Timothy Cotton's *pro se* motion, brought pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (Rec. Doc. 781).  This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  The respondent was served and has filed an answer as well as a memorandum in response to the motion.

For the following reasons, it is recommended that the motion be DENIED.

### FACTUAL  BACKGROUND

The facts of this case were recited in detail in the Fifth Circuit's opinion affirming Cotton's conviction and sentence.[1]  Succinctly, Cotton headed a cocaine

---

[1]    Rec. Doc. 764.

trafficking operation based in Houston, Texas.[2]   Cotton sold crack and powder cocaine from his apartment; converted powder cocaine into crack cocaine in his apartment, and operated several "crack houses" in and around Houston for distributing illegal narcotics[3].   In addition to an extensive client base in Texas,[4] Cotton "maintained a significant drug distribution network in Louisiana,"[5] had customers in Mississippi,[6] and maintained a drug operation in Kansas.[7]   Cotton was involved with "the Macara," "an organization in the Dominican Republic that used 'white magic' to invoke the protection and guidance of 'spirits.'"[8]   After Cotton and others involved in his drug operation paid to join the Macara, a ritual was held in Houston to invoke the spirits to protect Cotton's organization against certain law enforcement officers.[9]   Cotton also participated in a Macara festival in the Dominican

---

[2]      Rec. Doc. 764-1 at 3-4.

[3]      Rec. Doc. 764-1 at 4.

[4]      Rec. Doc. 764-1 at 6.

[5]      Rec. Doc. 764-1 at 7.

[6]      Rec. Doc. 764-1 at 10.

[7]      Rec. Doc. 764-1 at 11.

[8]      Rec. Doc. 764-1 at 6.

[9]      Rec. Doc. 764-1 at 6.

Republic.[10]  Evidence was presented at trial showing that a Macara spiritualist stole a large shipment of cocaine from some Dominicans, that the stolen cocaine was sold to Cotton's organization, and that the money was hidden in a vehicle that was shipped to the Dominican Republic and later observed parked at the spiritualist's home.[11]

## PROCEDURAL HISTORY

Cotton and eight other individuals were indicted on November 15, 2000.[12] Count One charged Cotton and his co-defendants with conspiracy to possess cocaine with intent to distribute, beginning or about January 1, 1990 until September 1, 2000, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Count Two charged Cotton with possession of cocain base with intent to distribute on April 11, 1996, in violation of 21 U.S.C. § 841(a)(1).  Count Three charged Cotton with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Count Four charged Cotton with conducting a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848, which spanned the time period from January 1, 1990 through December 1, 1999.  Count Five was a forfeiture count.  On August 8, 2003, upon motion by the

---

[10]     Rec. Doc. 764-1 at 6.

[11]     Rec. Doc. 764-1 at 9.

[12]     A copy of the grand jury's Superseding Indictment, filed on November 15, 2000, is found in the record at Rec. Doc. 52.

government, the Court dismissed Count Three of the Superseding Indictment, the money laundering count.[13]

The trial lasted for fourteen days,[14] during which the government presented more than one hundred witnesses and introduced more than one thousand exhibits.[15]

On August 12, 2004, Cotton was found guilty of conspiracy to possess with intent to distribute over fifty grams of cocaine base and he was found guilty of continuing criminal enterprise.[16] Upon the government's motion, the Court dismissed the conspiracy count, which was Count One of the superseding indictment.[17]

On January 26, 2005, Cotton was sentenced to life imprisonment.[18]  Cotton appealed, and the Fifth Circuit affirmed his conviction.[19]

---

[13]     Rec. Docs. 303, 308.

[14]     Rec. Doc. 596.

[15]     Rec. Doc. 764-1 at 4.

[16]     Rec. Doc. 599.

[17]     See Rec. Doc. 845, the Fifth Circuit's decision regarding the renumbering of the counts of the indictment.

[18]     Rec. Doc. 706.

[19]     Rec. Doc. 764-1 at 2.

Cotton then filed this timely motion to vacate, alleging that he received ineffective assistance of counsel at trial and on appeal.[20]  The government filed an answer and a memorandum in support of its answer.[21]

## ANALYSIS

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.[22]

All of the grounds for relief articulated in Cotton's briefing are ineffective assistance of counsel claims.  The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[23]  This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."[24]  Ineffective assistance of counsel claims are reviewed under a two-prong test

---

[20]     Rec. Doc. 155.

[21]     Rec. Docs. 166, 166-1.

[22]     *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

[23]     *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

[24]     *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003), citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

established by the United States Supreme Court.  A defendant must demonstrate:  (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant.[25]  The defendant bears the burden of establishing both prongs of the test, and failure to establish either prong is fatal to the claim.[26]

In analyzing the first part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time."[27]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[28]

The second part of the test, prejudice, is satisfied only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[29]  "A reasonable probability is a probability sufficient to

---

[25]  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[26]  *United States v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 281 (5th Cir. 1997).

[27]  *Strickland v. Washington*, 466 U.S. at 689.

[28]  *Strickland v. Washington*, 466 U.S. at 689.

[29]  *Strickland v. Washington*, 466 U.S. at 694.

undermine confidence in the outcome."[30]  Thus, to establish prejudice, Cotton must show a reasonable probability that he would have prevailed at trial had his counsel done those things Cotton now claims should have been done during trial and that his conviction would have been overturned or his sentence shortened if his appellate counsel had been effective.

## Issue One

Cotton claims that he received ineffective assistance of counsel at trial because his attorney waived his opening statement.  Cotton was tried along with four co-defendants.  Counsel for two of the defendants made opening statements, while counsel for Cotton as well as counsel for the two other defendants did not make opening statements.[31]  An attorney's decision concerning whether to make an opening statement falls within the zone of trial strategy.[32]  "[T]the bare fact that counsel made no opening statement establishes neither deficient performance nor prejudice."[33]  To

---

[30]     *Strickland v. Washington*, 466 U.S. at 694.

[31]     Rec. Doc. 542.

[32]     *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984); *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965).

[33]     *Martin v. Thaler*, 2010 WL 2697155, 8 (N.D. Tex. 2010).

the contrary, there is a strong presumption that the decision to waive an opening statement is a matter of trial strategy and professional judgment.[34]

In this case, Cotton has not presented any argument or evidence demonstrating that his trial counsel's decision not to make an opening statement was anything more than a strategic decision.  He argues that the conspiracy and CCE charges were complex and that the elements of those crimes and the available defenses should have been explained to the jury by his counsel in an opening statement.  In particular, Cotton argues that his counsel was ineffective for failing to instruct the jury, in an opening statement, that it was required to unanimously agree on which predicate acts constitute a continuing series of violations to support the CCE conviction.

But Cotton has not demonstrated that he was prejudiced by his attorney's decision not to give an opening statement nor has he demonstrated a reasonable probability that the result of the trial would have been different if his attorney would have made an opening statement.  He does not argue that the trial court judge failed to provide the subject jury instructions at the completion of the evidence.  In fact, the trial court judge did instruct the jury, before it began its deliberations, that it was

---

[34]     *Williams v. Beto*, 354 F.2d at 703.

required to agree unanimously on which of the underlying violations supported the CCE charge.[35]

Consequently, Cotton has not shown that he was denied effective assistance of counsel because his trial counsel gave no opening statement.  This claim for *habeas corpus* relief has no merit and should be denied.


**Issue Two**

Cotton contends that his trial counsel was ineffective for failing to challenge the indictment.  Specifically, Cotton contends that his counsel was ineffective for failing to file a pretrial motion arguing that the indictment was defective because it did not set forth three predicate violations required to support the CCE charge and, for that reason, deprived the trial court of jurisdiction.

Whether to file a pretrial motion is a matter of trial strategy.[36]  More particularly, whether to file a motion seeking to quash an indictment is a matter of

---

[35]     Trial Transcript at 2371.

[36]     *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d at 283; *Williams v. Beto*, 354 F.2d at 703.

professional judgment, to be exercised in the light of the attorney's legal knowledge.[37] Furthermore, counsel is not required to file futile motions.[38]

An indictment is sufficient if it sets forth the elements of the offense charged, fairly informs the defendant of the charge he must meet, and precludes the risk of future prosecutions for the same offense.[39]  Cotton does not complain that the grand jury's indictment fails to meet these criteria.  Instead, he complains solely that the indictment fails to list three predicate acts supporting the CCE charge and argues that his counsel was ineffective for failing to raise a jurisdictional issue based on this alleged omission.  But such an omission does not automatically invalidate the indictment[40] nor does it deprive the court of jurisdiction.

The Fifth Circuit previously considered and rejected this identical argument. In that case, the plaintiff argued that the indictment was defective because it did not allege the series of violations on which his CCE conviction was based, contending

---

[37]     *Williams v. Beto*, 354 F.2d at 703.

[38]     *Murray v. Maggio* 736 F.2d at 283.

[39]     *United States v. Alford*, 999 F.2d 818, 823 (5th Cir. 1993); *United States v. Green*, 964 F.2d 365, 372 (5th Cir. 1992).

[40]     See, e.g., *United States v. Flaharty*, 295 F.3d 182, 197 (2nd Cir. 2002) ("Although *Richardson* requires that the jury be unanimous on each of the constituent felonies, we have held that an indictment that does not identify which of many alleged felonies constituted the series is not thereby defective.")

-10-

that the defective indictment deprived the court of jurisdiction.[41]  The Fifth Circuit

held that the argument was meritless, based upon decisions by the Supreme Court and

the Fifth Circuit, holding that defects in an indictment are nonjurisdictional.[42]

Accordingly, Cotton's claim that the allegedly defective indictment deprived the court

of jurisdiction is meritless, and Cotton has not demonstrated that his attorney's failure

to challenge the indictment was anything other than a sound strategic decision that

avoided the filing of a futile motion.  Cotton has not shown that his attorney's failure

to challenge the indictment was ineffective assistance of counsel.  Therefore, this

alleged basis for *habeas corpus* relief lacks merit.


### ISSUE THREE

Cotton contends that his trial counsel was ineffective because he did not object

to the introduction of evidence concerning bad acts outside the geographical scope

of the alleged conspiracy, including but not limited to testimony concerning Cotton's

involvement with a voodoo or white magic group in the Dominican Republic called

the Macara.

---

[41]     *Wesson v. U.S. Penitentiary Beaumont, TX*, 305 F.3d 343, 346 (5th Cir. 2002).

[42]     *Wesson v. U.S. Penitentiary Beaumont, TX*, 305 F.3d at 346, citing *United States v. Cotton*, 535 U.S. 625, 631 (2002); *United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002) (en banc); *United States v. Gonzalez*, 259 F.3d 355 (5th Cir. 2002) (en banc).

An attorney's decision to object or not, like his decision concerning whether to file a pretrial motion, usually is a strategic decision entitled to much deference.[43] The Court "must be careful not to second guess legitimate strategic choices."[44] Furthermore, an attorney is not required to file futile motions or make futile objections.[45]   Accordingly, trial counsel's failure to object to admissible evidence would not constitute deficient performance.[46]

Here, Cotton argues that his counsel should have objected to the introduction of evidence of drug transactions that took place "outside the scope of the conspiracy" as being inadmissible under the Federal Rules of Evidence.  He also argues that his counsel should have objected to the government's presentation of evidence regarding his participation in the Macara because this evidence was unfairly prejudicial and therefore also inadmissible.  The issue is whether the evidence he complains about was intrinsic to the crimes charged and, for that reason, was admissible.

> The proper test to apply in deciding the admissibility of "similar acts" or "other acts" evidence depends upon whether the evidence in question is "intrinsic" or

---

[43]     *United States v. Dockens*, 253 F.3d 706, 3 (5ᵗʰ Cir. 2001), citing *Strickland v. Washington*, 466 U.S. at 689.  See, also, *Lamb v. Johnson*, 179 F.3d 352, 358 (5ᵗʰ Cir. 1999).

[44]     *Ward v. Dretke*, 420 F.3d 479, 491 (5ᵗʰ Cir. 2005).

[45]     *Koch v. Puckett*, 907 F.2d 524, 527 (5ᵗʰ Cir. 1990); *Murray v. Maggio*, 736 F.2d at 283.

[46]     *Koch v. Puckett*, 907 F.2d at 527.

-12-

"extrinsic" evidence.  "Other act" evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.[47]

The admissibility of extrinsic evidence is governed by Rule 404(b) of the Federal Rules of Evidence, which states that, while evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, it may be admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Interpreting that rule requires a two-step test:

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character.  Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403....[48]

---

[47]    *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990), citing *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982).  See also, *United States v. Stovall*, 825 F.2d 817, 825 (5th Cir. 1987).

[48]    *United States v. Williams*, 900 F.2d at 825, quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

An act cannot be characterized as extrinsic when the evidence concerning that act and the evidence used to prove the crime charged are inextricably intertwined.[49]

In this case, the facts adduced at trial concerning the activities of Cotton and his associates in Texas, Mississippi, Louisiana, and Kansas, as well as the facts concerning Cotton's participation in the white magic group in the Dominican Republic, are all evidence of "the background facts surrounding the commission of the crime"[50] and constitute intrinsic evidence necessary to complete the "story of the crime."[51]  The evidence regarding drug deals in states other than Texas helped to establish how Cotton's criminal enterprise operated, as well as the volume of drug sales and the extent of the trafficking of the drugs.  Clearly, that evidence was inextricably intertwined with the charges brought against Cotton in the indictment.

Similarly, the evidence concerning Cotton's participation in the Macara was also inextricably intertwined with Cotton's drug selling operation.  Cotton participated in the Macara and sought the assistance of the Macara spiritualist in an

---

[49]    *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979), citing *United States v. Calvert*, 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied*, 424 U.S. 911 (1976); 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5239 at 441 (1978).  See, also, *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994); *United States v. Torres*, 685 F.2d at 924.

[50]    *United States v. Wilson*, 578 F.2d 67, 72 (5th Cir. 1978).

[51]    *United States v. Morgan*, 117 F.3d 849, 861 (5th Cir. 1997) (use of a shotgun arose out of the drug conspiracy, was inextricably intertwined with the specific drug deal, and was part of the story of the crime.)

effort to protect his drug trafficking operation.  Evidence was also presented showing that he purchased drugs that the Macara spiritualist had stolen from a Dominican dealer and his drug operation returned the money used to purchase those drugs back to the spiritualist's home.  These facts show that Cotton's participation in the Macara was part and parcel of his overall drug trafficking operation.

As such, the evidence regarding Cotton's operations beyond his home based in Houston, Texas, including his activities related to the Macara, was admissible, and the failure of Cotton's counsel to object to its presentation at trial cannot be considered ineffective assistance of counsel.

Even if it were established that the evidence of Cotton's participation in the Macara and his operations "outside the geographical scope of the conspiracy"[52] was not admissible, however, the result would still be the same.  The record contains no reasons establishing why Cotton's counsel did not object to the evidence regarding the acts that Cotton argues he should have challenged.  His counsel may have had strategic or tactical reasons for not objecting and, if so, those reasons would negate a finding of deficient performance.  The United States Supreme Court has instructed that, in such a situation, when there is no evidence why counsel did what he did, courts should presume that the counsel's challenged action might be considered

---

[52]    Rec. Doc. 781-2 at 8.

sound trial strategy.[53]  Cotton has not presented any evidence demonstrating that his counsel is not entitled to such a presumption nor has he presented any evidence establishing that he would not have been convicted had the challenged evidence, including but not limited to that regarding the Macara, not been presented at trial.  His counsel's alleged error does not raise the reasonable probability that, but for counsel's action (or inaction), the result of the proceeding would have been different.[54]  Accordingly, even if the evidence concerning the Macara and the acts that occurred outside of Houston, Texas was inadmissible, Cotton is not entitled to *habeas corpus* relief.

### ISSUE FOUR

Finally, Cotton contends that he received ineffective assistance of counsel on appeal because his appellate counsel did not challenge the sufficiency of the evidence supporting his CCE conviction.  The Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit.[55]  Instead, appellate counsel is required to raise and brief only those issues that counsel believes,

---

[53]     See *Strickland v. Washington*, 466 U.S. at 689.

[54]     *Knox v. Johnson*, 224 F.3d 470, 480-81 (5th Cir. 2000).

[55]     *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

in the exercise of professional judgment, to have the best chance of success.[56]

Raising only those issues with plausible merit is emblematic of an able counsel's trial

strategy.[57]

In this case, Cotton moved for a judgment of acquittal shortly after the trial

concluded, and his motion was denied.  He then filed another motion for a judgment

of acquittal[58] as well as a motion for a new trial.[59]  Both motions were denied.[60]  In

denying the motion for a judgment of acquittal, the trial court said:

> a court may set aside a jury's guilty verdict and grant a
> post-verdict judgment of acquittal to a defendant if the
> evidence presented at trial was insufficient to sustain the
> conviction.  Finding the evidence in this case sufficient to
> sustain the jury's verdict... defendant's motion for
> judgment of acquittal is DENIED.[61]

---

[56]    See, e.g., *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *Willingham v. Cockrell*, 61 Fed. App'x 918 (5th Cir. 2003), citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[57]    *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986).

[58]    Rec. Doc. 573.

[59]    Rec. Doc. 576.

[60]    Rec. Docs. 601, 602.

[61]    Rec. Doc. 601.

Cotton then filed a motion to correct his sentence[62] and another motion for new trial.[63]  Again, the trial court denied both motions.[64]  In denying the motion for a new trial, the Court addressed the new evidence that Cotton and his co-defendants claimed would have exonerated them, which was the affidavit testimony of eight inmates. The Court said:

> given the substantial evidence supporting the verdicts in this case beyond the testimony of the inmates, this impeachment evidence does not have any tendency to undermine the outcome at trial.  The Court also finds that in light of the overwhelming evidence presented at the three-week trial of defendants, and the questionable credibility of the affiants' proffered testimony, a new trial would probably *not* result in an acquittal of any of these three defendants.[65]

Cotton's appellate counsel challenged the district court's denial of his motion for a new trial on the basis that newly discovered evidence exonerated him[66] but did not expressly challenge the sufficiency of the evidence presented at trial on the CCE charge.  The Fifth Circuit affirmed the district court's denial of Cotton's motion for

---

62      Rec. Doc. 674.

63      Rec. Doc. 675.

64      Rec. Docs. 685, 727.

65      Rec. Doc. 727 at 3 (emphasis in the original).

66      Rec. Doc. 764-1 at 2.

a new trial.[67]  In reaching its ruling, the Fifth Circuit commented on the evidence that was presented at trial on the CCE charge.  "We find ample support for the district court's conclusion that a new trial would probably not result in Cotton's acquittal of his CCE conviction."[68]  The Fifth Circuit reviewed the evidence that was presented by the government in support of the CCE charge and concluded:  "In light of all of this evidence, there is sufficient support for Cotton's CCE conviction...."[69]  The Fifth Circuit then went on to say that, even if it were to consider the newly discovered evidence upon which Cotton based his motion for a new trial, "Defendants [including Cotton] still have not established that [the evidence], if introduced at a new trial, would probably produce an acquittal."[70]  The Fifth Circuit then concluded that "the district court did not abuse its discretion in denying Defendants' [including Cotton's] motions for new trial based on newly discovered evidence."[71]

Even though it was not expressly asked to do so, the Fifth Circuit considered the sufficiency of the evidence presented in support of the CCE charge and concluded that, in light of all of the evidence presented at trial, there was sufficient support for

---

[67]   Rec. Doc. 764-1 at 2, 42.

[68]   Rec. Doc. 764-1 at 22.

[69]   Rec. Doc. 764-1 at 23.

[70]   Rec. Doc. 764-1 at 24.

[71]   Rec. Doc. 764-1 at 24.

Cotton's conviction.  This demonstrates that, had Cotton's appellate counsel raised the sufficiency of he evidence issue on appeal, the appeal would not have resulted in his conviction being overturned.  This was not an issue with plausible merit, and Cotton's counsel was not ineffective for failing to raise it on appeal.

Furthermore, it is well settled in the Fifth Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not to be considered in a subsequent § 2255 motion.[72]  The fact that the Fifth Circuit already considered the sufficiency of the evidence presented at trial with regard to the charges against Cotton precludes that issue from being considered further.

Accordingly, for these two independent reasons, Cotton is not entitled to *habeas corpus* relief on this issue.


### Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Cotton's motion to vacate, set aside, or correct his sentence (Rec. Doc. 781) be **DENIED**.

---

[72]     *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980).

-20-

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this report and recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on

whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

Signed at Lafayette, Louisiana, this 2nd  day of November, 2010.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)