UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:00-CR-60029-01** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JOHN TIMOTHY COTTON (01)** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Before the Court is a Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act ("FSA"), filed by Defendant John Timothy Cotton. [ECF No. 947; *see also* ECF No. 951]. By his motion, Cotton moves the Court to reduce his term of imprisonment to twenty years. [ECF No. 951 at 2, 9]. The government opposes the motion, arguing Cotton is not eligible for relief under the FSA. [ECF No. 950 at 1]. Alternatively, and in the event the Court finds Cotton is eligible for relief, the government asks that the Court "consider the sentencing factors provided in 18 U.S.C. §3553(a) and the defendant's post-sentencing conduct when determining relief." *Id.* For the following reasons, Defendant's motion is GRANTED, and the Court will reduce Defendant's term of imprisonment to twenty years.

## I.
### BACKGROUND

On November 15, 2000, Cotton and eight co-defendants were charged in a superseding indictment with various narcotics offenses. [ECF No. 52]. As pertinent here, the indictment alleged that over a ten year period, Cotton and his co-defendants would procure cocaine and cocaine base (also known as "crack"), convert cocaine into cocaine base, and transport cocaine and cocaine base from Houston, Texas to various locations in Texas, Louisiana, Mississippi, and Kansas for distribution purposes. Specifically, Cotton was charged as follows: (1) conspiracy to possess with

intent to distribute more than fifty grams of cocaine base (Count 1); (2) possession with intent to distribute over fifty grams of cocaine base (Count 2); (3) conspiracy to commit money laundering involving the proceeds of drug trafficking activity (Count 3); (4) continuing criminal enterprise ("CCE") (Count 4); and (5) forfeiture of all property derived from drug proceeds (Count 5). The case proceeded to trial, and Cotton was prosecuted on the conspiracy, CCE, and forfeiture charges (counts 1, 4, 5).[1] On August 12, 2004, following a fourteen-day jury trial, Cotton was found guilty on the conspiracy charge and the CCE charge. [ECF No. 599]. The jury also returned a forfeiture verdict against Cotton. [ECF No. 600]. Because of Cotton's conviction on the CCE charge, the district court granted the government's motion to dismiss the conspiracy count against Cotton to avoid double jeopardy issues. [ECF No. 596 at 2].

A sentencing hearing was held on January 26, 2005. [ECF No. 706]. Cotton was sentenced pursuant to 21 U.S.C. 848(b), which mandates life in prison for a CCE if certain statutory elements are met.[2] As to the sentencing guidelines, due to the amount of crack involved Cotton's total offense level was 42, and his criminal history category was II, thereby resulting in a guideline range of imprisonment of 360 months to life, adjusted to life in prison pursuant to U.S.S.G. § 5G1.1(b).[3] *See* Sentencing Transcript at 20, 32. In accordance with the statutorily mandated minimum term of imprisonment, the court sentenced Cotton to life in prison, and additionally imposed a five-year term of supervised release. [ECF No. 708]. On January 19, 2017, President

---

[1] The remaining counts of the indictment were dismissed prior to trial. *United States v. Jackson*, 254 Fed.Appx. 434, 437 (5th Cir. 2007).

[2] 21 U.S.C. 848(b) mandates a life sentence if the person who engages in a CCE is: 1) a principal organizer or leader of the enterprise, and 2) the violation involved at least 300 times the quantity of substance described in 21 U.S.C. 841(b)(1)(B), or 3) the enterprise received $10 million dollars "in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution" of the controlled substance.

[3] The PSR assigned an additional two points for possession of a dangerous weapon. However, the sentencing court found this enhancement did not apply. [ECF No. 922 at 3; *see also* Sent. Transcript at 20].

Barack Obama commuted Cotton's total term of imprisonment to 360 months. [ECF No. 945 at 4]. Pursuant to the First Step Act, Cotton now asks that his sentence be reduced to twenty years.

## II.
## APPLICABLE LAW

On August 3, 2010, after more than two decades of substantial criticism from the Sentencing Commission and others in the law enforcement community that the harsh treatment of crack cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act amended 21 U.S.C. § 841(b)(1)(A)(iii) by increasing the 50-gram threshold for cocaine base convictions to 280 grams. *See* 124 Stat. at 2372. Section 2 similarly amended § 841(b)(1)(B)(iii) by increasing the 5-gram cocaine base threshold to 28 grams. *Id.* The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Dorsey* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 404, 132 Stat 5194 (2018). Section 404 of the First Step Act provides:

- (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.

- (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

- (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to

> reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

## III.
### ANALYSIS

A.     **Whether Defendant is eligible for relief under the First Step Act**

The government acknowledges "a violation of § 848(b)(2)(A) can be a covered offense under the First Step Act," because the statutory penalty for that offense was modified by Section 2 of the Fair Sentencing Act.[4] [ECF No. 950 at 6; *see also Id.* at n.5; *United States v. Butler*, 8:92CR14, 2021 WL 366108, at *3 (D. Neb. Feb. 3, 2021)]. Nevertheless, the government argues Cotton should be deemed ineligible for relief under the First Step Act due to the amount of cocaine base attributed to him in the sentencing record. *Id.* at 8. The government concedes "this argument was rejected by the Fifth Circuit, but makes it to preserve it for future proceedings in this case." *Id.* (citing *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir. 2019)). The Court agrees that this argument is now foreclosed by the Fifth Circuit. In *Jackson*, the Fifth Circuit held "whether a defendant has a 'covered offense' under section 404(a) depends only on the statute under which he was convicted. If he was convicted of violating a *statute* whose penalties were modified by the

---

[4] Although the government agrees a violation of § 848(b)(2)(A) (*i.e.*, a violation involving a leader of a CCE, where the CCE "involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title") can be a covered offense under the FSA, it contends that a violation of subsection (b)(2)(B) (*i.e.*, a violation involving a leader of a CCE that received at least $10 million dollars in gross receipts during any twelve-month period of the CCE's existence for the manufacture, distribution, etc. of a controlled substance) is not a covered offense, because "it is not tied to a crack-quantity threshold that was modified by the Fair Sentencing Act." *Id.* at 6. The government then acknowledges that neither the requisite drug amount nor monetary amount were set forth in the Indictment, nor was the jury tasked with making any such findings. *Id.* The government then states, "[T]herefore the Court might find the defendant eligible for relief based on the new applicable penalty of 20 years to life. . . ." *Id.* As the government makes no explicit argument that Cotton is ineligible for relief by operation of either provision of § 848(b)(2), the Court finds it need not further evaluate the effect of subsection (b)(2) with regard to Cotton's eligibility under the FSA. (The Court would additionally note that a review of the sentencing transcript reveals the court did not rely upon § 848(b)(2)(B) for sentencing purposes.)

Fair Sentencing Act, then he meets that aspect of a 'covered offense.'" *Jackson* at 320; *see also United States v. Winters*, 986 F.3d 942, 948 (5th Cir. 2021) ("The inquiry does not turn on the *facts* specific to the defendant's offense. . . ."). In this matter, Cotton was convicted of violating a Federal criminal statute (21 U.S.C. § 848(b)), for which the statutory penalties were modified by Section 2 of the Fair Sentencing Act; Cotton's offense was committed before August 3, 2010; Cotton has not previously filed a motion seeking First Step Act relief; and Cotton's sentence has not been reduced pursuant to the amendments made by sections 2 or 3 of the Fair Sentencing Act. Accordingly, the Court finds Cotton is eligible for relief under the First Step Act.

**B.     Whether Relief is Warranted**

In determining the appropriate sentence, the Court has considered the statutory sentencing range, the sentencing guidelines range, the sentencing factors set forth in 18 U.S.C. § 3553(a), and pre- and post-sentencing conduct. *See e.g. Jackson* at 321-22; *United States v. Williams*, 943 F.3d 841, 843-44 (8th Cir. 2019) (citing *Pepper v. U.S.*, 562 U.S. 476, 504 (2011)). The statutory penalty range for engaging in a continuing criminal enterprise begins at twenty years to life. 21 U.S.C. § 848(a). The penalty is enhanced to mandatory life in prison if the defendant was the principal leader, or one of the principal leaders, of the CCE, and he is responsible for distribution of "at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title,"[5] or "the enterprise . . . received $10 million dollars in gross receipts during any twelve-month period of its existence for the . . . distribution of a substance described in section 841(b)(1)(B) of this title." *Id.* at § 848(b). In this matter, the Indictment did not set forth the requisite drug quantity for a mandatory life sentence[6], nor was the jury tasked with making the necessary findings. The Court

---

[5] At the time Cotton was sentenced, the minimum quantity of cocaine base required to trigger a mandatory life sentence under § 848(b)(2)(A) was 1.5 kilograms; today, it is 8.4 kilograms.
[6] In fact, the indictment does not even indicate that the government was seeking a mandatory life sentence under § 848(b) at all. [ECF No. 52 at 9].

therefore finds that under the facts of this case and the arguments made in connection with the pending motion, Cotton's current statutory sentencing range is twenty years to life as set forth in 21 U.S.C. § 848(a). [7] *See United States v. Butler*, 8:92CR14, 2021 WL 366108, at *3 (D. Neb. Feb. 3, 2021) (After receiving additional guidance from the DOJ, the government concedes § 848 is a covered offense, the defendant should receive the benefit of *Alleyne*, and the defendant therefore was no longer subject to the to the statutory mandatory life sentence under § 848(b) because he was only found guilty of distributing 50 grams or more of cocaine base). Cotton's sentencing guideline range is now 360 months to life. [ECF No. 922 at 1].

With regard to the sentencing factors set forth at 18 U.S.C. § 3553(a)(1)[8], Cotton was an organizer of a continuing criminal enterprise that sold a very large amount of narcotics in multiple

---

[7] In *Alleyne*, the Supreme Court held that any fact that increases the statutorily mandated minimum penalty for a crime must be submitted to the jury and found beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99 (2013). While *Alleyne* issued after Cotton was sentenced, the Court finds that relying on prior drug quantity findings that were never submitted to a jury to determine First Step Act eligibility would be inconsistent with the Supreme Court's reasoning in *Alleyne* and the Sixth Amendment. *See e.g. United States v. Jones*, 96 CR 553-4, 2020 WL 1848210, *5 (N.D. Ill. Apr. 13, 2020); *United States v. Martin*, 2019 WL 2571148, *2 (E.D.N.Y. June 20, 2019). And though the Court recognizes *Alleyne* does not apply retroactively to habeas motions brought pursuant to 28 U.S.C. § 2255, it is not necessarily the case that nonretroactivity principles apply to collateral review pursuant to 18 U.S.C. § 3582(c)(1)(B). *See e.g. United States v. Chambers,* 956 F.3d 667, 673 (4th Cir.2020); *United States v. Thompson,* 404 F.Supp.3d 1003, 1008-10 (W.D. La. 2019), *aff'd*, 827 Fed.Appx. 458 (5th Cir. 2020); *c.f. U.S. v. Fanfan*, 558 F.3d 105, 108 (1st Cir. 2009). Further, any interpretive uncertainty here must be resolved "under the rule, repeatedly affirmed, that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 229 (1999) (internal quotation marks omitted); *see also Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (courts assume Congress "legislates in the light of constitutional limitations"); *United States v. Williams*, 402 F.Supp.3d 442, 448 (N.D. Ill. 2019) ("[B]y 2018 Congress knew that courts were no longer constitutionally permitted to impose mandatory minimums based solely on judicial fact-finding at sentencing. Congress would not have expected federal courts to then double-down on those unconstitutional findings in applying the First Step Act.").

[8] These factors include, *inter alia*, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training; the sentencing guidelines and policy statements issued by the Sentencing Commission; and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a).

states over a period of approximately ten years. There is no indication in the PSR that Cotton engaged in any violent acts in connection with the offense conduct. Cotton has four prior criminal convictions – three convictions for unlawfully carrying a weapon at ages 17, 24 and 28, and one conviction for theft of a $19.00 shirt at age 18 – resulting in a criminal history category of II.[9] [ECF No. 707 at 7-8]. Prior to his federal conviction, Cotton's longest period of incarceration was fifteen days. *Id.* at 8, ¶ 34. Cotton has eight children, whose ages ranged from approximately 2 to 21 at the time of sentencing. While incarcerated, Cotton's parents and one of his children passed away. Cotton acknowledges that he still has much work to do to rectify his past mistakes with his children. [ECF No. 951-6]. Cotton will turn 56 years old this month. He has been incarcerated for the instant offense for over 16.5 years, and his current projected release date is February 27, 2030.

As to post-sentencing conduct, Cotton entered the Bureau of Prisons ("BOP") at age 39 to serve a life sentence. Over the past sixteen years, and despite his life sentence, Cotton has excelled in his efforts at rehabilitation. Cotton earned his G.E.D. on April 4, 2006 and then completed a drug education program. [ECF No. 951-1 at 1-2]. Cotton worked as a cook for seven years. *Id.* at 1. He currently works in the chapel and receives satisfactory work reports. *Id.* He has taken multiple educational courses, including 307 hours of Vocational Micro Computer Class. *Id.* at 1-2. BOP staff states that Cotton "has a very good rapport with staff and inmates." *Id.* at 1. Cotton has not received a single disciplinary incident report during his incarceration, which in this Court's experience is rare and highly commendable. He has earned his way down to a low security institution.

Shortly after entering BOP custody, Cotton was baptized, turned his life over to God and entered the prison ministry. [ECF Nos. 951 at 9; 951-6]. BOP staff notes that every Thursday

---

[9] These prior offenses all appear to be misdemeanors. *See* TX PENAL §§ 31.03, 46.02; *see also* ECF No. 951 at 7.

evening, "Cotton teaches and preaches the Bible to his fellow inmates." [ECF No. 951-1 at1]. The staff chaplain at Cotton's institution has submitted a letter on Cotton's behalf. [ECF No. 951-3]. The chaplain describes Cotton as a "spiritual leader to inmates," many of whom "look up to Mr. Cotton as a pillar of faith towards God within his faith community." *Id.* The chaplain continues:

> During my time knowing him, I've observed him helping inmates to cope appropriately with prison life and kept them focused on being a positive influence to their families through prayer and positive character lifestyle. Based on what I have observed, I was truly amazed on how he has impacted the lives of other inmates. I fully believe Cotton should be given a reduction of his sentence.

*Id.* Cotton hopes to continue ministering to others upon release. Cotton's journey of rehabilitation is especially impressive considering at the time his life sentence was imposed, he had no idea that more than a decade and a half later, changes in the law would arrive giving him a glimmer of hope for release. Despite these circumstances, Cotton has spent his time endeavoring not only to better himself, but also to better those around him without the prospect of any reward. These facts demonstrate that Cotton is intrinsically committed to rehabilitation.

After consideration of the § 3553(a) factors, including the history and characteristics of this Defendant, the need to afford adequate deterrence to criminal conduct and to promote respect for the law, the parties' arguments, and Congress's intent in passage of the First Step Act, the Court determines that a reduction of Defendant's sentence of imprisonment to twenty years is sufficient but not greater than necessary to comply with the purposes of sentencing. Such a sentence is a substantial prison term, commensurate with the crimes Cotton committed. In this Court's opinion, a greater sentence is not necessary to prevent unwarranted departures when compared with similar sentences in this era.

Accordingly,

IT IS HEREBY ORDERED that the Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act [ECF No. 947] is GRANTED, and the Court will issue an amended judgment reducing Defendant's term of incarceration to TWENTY (20) YEARS, effective May 12, 2021. Except as modified in this paragraph, all other provisions of the Judgment imposed on January 26, 2005 [ECF No. 708] REMAIN in effect.

SIGNED this 12th day of April, 2021.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE